MARLENE WEEKLY, Plaintiff-Appellant, v. JAMES SOLOMON, Defendant-Appellee.

Second District   No. 2—85—0954

Opinion filed June 26, 1987.—Rehearing denied July 28, 1987.

James J. Friedman, of Waukegan, for appellant.

John H. Krackenberger, of Brydges, Riseborough, Morris, Franke & Miller, of Waukegan, for appellee.

JUSTICE NASH delivered the opinion of the court:

In this medical malpractice action, plaintiff, Marlene Weekly, appeals from a directed verdict entered in favor of defendant, Dr. James Solomon, at the close of plaintiff's case in a jury trial. She contends that the trial court erred in excluding the testimony of plaintiff's expert medical witness on the grounds he was not qualified to testify as to the applicable standard of care required of the defendant physician in treating plaintiff and in informing her of the foreseeable risks and results of his treatment.

In January 1980, plaintiff underwent a bariatric surgical procedure performed by Dr. Solomon known as "gastric stapling." Thereafter, plaintiff filed a multiple-count complaint against Dr. Solomon, Dr. John Belucci, and St. Therese Hospital. The counts against Dr. Belucci and the hospital were dismissed in the trial court, and this appeal is concerned only with the entry of a directed verdict in favor of Dr. Solomon as to count III of the complaint grounded in negligence. Therein plaintiff alleged that Dr. Solomon was negligent in that he failed to warn plaintiff of the nature and risks of the surgery, failed to prescribe the proper post-operative diet, and used improper surgical technique.

Plaintiff first consulted Dr. John Belucci on January 26, 1980, for treatment of an excess weight problem. Dr. Belucci recommended gastric stapling, a surgical procedure in which the upper part of the stomach is stapled to reduce the size of the stomach and thereby limit the patient's intake of food. Dr. Belucci referred the plaintiff to Dr. Solomon, who performed the surgery. Plaintiff testified that she was told that she would lose weight as a result of this procedure because she would be incapable of eating large portions of food; however, she did not lose weight after the surgery.

At trial, plaintiff sought to call Dr. Daniel Radecki as an expert witness, at which time the court permitted counsel to examine Dr. Radecki outside the presence of the jury to establish his competency to testify as to the applicable standard of care. Dr. Radecki testified that he was a general surgeon practicing medicine in Toledo, Ohio, a

community of about 380,000, its hospitals ranging in size from 150 to 500 beds. Dr. Radecki stated that he had performed and assisted in various types of bariatric surgery, including gastric stapling, and was familiar with the Pace procedure, which was the stapling method used by defendant in treating plaintiff. He had once attended a symposium on bariatric surgery in Chicago but had never spoken to any doctors who practiced in Lake County or who performed the variety of the Pace procedure used on the plaintiff. He was not familiar with any of the hospital facilities in Lake or Cook counties. Dr. Radecki stated that at the time of plaintiff's surgery there was a national standard for the Pace procedure; however, he also stated that the procedure had been modified to the extent that surgeons performed it in different ways.

On defendant's motion to bar Dr. Radecki from testifying, the trial court found that for purposes of the locality rule, plaintiff had neither established a similarity between Toledo, Ohio, and Waukegan, Illinois, nor shown that Dr. Radecki was familiar with the standard of care in Waukegan. The court also found that there was no national standard of care, as the testimony had shown there were differences of opinion as to the proper stapling technique, and a profusion of other surgical techniques for the treatment of obesity. Based upon these findings, the court barred Dr. Radecki from testifying as an expert witness.

In moving the court to reconsider its ruling, plaintiff asked the court to take judicial notice of certain statistical data pertaining to Waukegan and Toledo. The court denied the motion to reconsider, and at the close of plaintiff's case in chief directed a verdict in favor of Dr. Solomon.

We consider first whether the trial court erred in barring Dr. Radecki from testifying as an expert medical witness. In a medical malpractice action, plaintiff must show, through expert testimony, the standard of care applicable to the defendant physician and the failure of defendant to conform to the standard. The proponent of an expert's testimony must lay a foundation which affirmatively establishes the expert's qualifications and competency to testify. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 242-43, 489 N.E.2d 867.) The expert witness must show that he is familiar with the methods, procedures, and treatments ordinarily observed by other physicians, in either the defendant physician's community, a similar community, or that the standards upon which he bases his opinion are national or international in scope. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 243, 489 N.E.2d 867; *Duvall v. Laidlaw* (1986), 141 Ill. App. 3d 717,

722, 490 N.E.2d 1004.) It is within the sound discretion of the trial court to determine if the witness is qualified to testify as an expert to establish the standard of care and as to whether defendant conformed to the standard. *Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 285, 396 N.E.2d 13; *Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 632, 486 N.E.2d 326.

■ In the present case, plaintiff sought to establish the standard of care through the testimony of Dr. Radecki, who practices medicine in Toledo, Ohio. He testified that he did not know the standard of care in Lake County, Illinois, for the surgical procedure used in plaintiff's case and that he was unfamiliar with the Lake County hospitals and had not discussed the surgical procedure with any Lake County physicians.

Nor did plaintiff establish that Toledo was a community similar to Waukegan. "Similar locality" is defined in terms of the medical conditions and facilities available to the physician. In *Purtill v. Hess*, the court noted that the similar locality rule requires comparison of the availability of medical facilities for examination and treatment, the presence or absence of specialists and other medical personnel for consultation and assistance, and other variables. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 246, 489 N.E.2d 867.) In the present case, the only pertinent evidence offered by plaintiff was Dr. Radecki's testimony as to the population of Toledo and the size of its hospitals. This alone was insufficient to establish that Toledo was similar to Waukegan in terms of its medical conditions and facilities so as to permit Dr. Radecki to testify as an expert witness to the applicable standard of care under the similar locality rule.

Plaintiff also contends that the trial court should have taken judicial notice of the statistical data which she submitted to establish a similarity between Toledo and Waukegan. The data pertained to such matters as population, public school enrollment, the number of physicians and hospitals per inhabitant and was derived from the Rand McNally Road Atlas, World Almanac and Book of Facts, which sources counsel tendered to the court for verification of these facts.

■ Judicial notice may be taken of facts which are commonly known or of facts which, while not generally known, are readily verifiable from sources of indisputable accuracy. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 394, 469 N.E.2d 1085.) While the offered facts may be subject to judicial notice, they were of little probative value for purposes of the locality rule, as they were only remotely relevant to medical conditions and facilities. Furthermore, plaintiff's surgery took place in 1980, and the data was compiled in 1983.

Even if taken together with Dr. Radecki's testimony, the evidence offered was insufficient to establish a similarity between the medical communities of Toledo and Waukegan, and the circuit court properly excluded Dr. Radecki's testimony relating to the surgical treatment of plaintiff on this basis.

Plaintiff also contends the trial court erred in barring Dr. Radecki's testimony on the additional ground that there was no nationwide standard of care with respect to the surgical procedure performed on her. However, the court's finding is supported by Dr. Radecki's own testimony that the original Pace procedure, which was followed in the present case, had been modified, and that there was a divergence of opinion among bariatric surgeons as to the best way to perform the procedure. When the trial court asked Dr. Radecki whether there was a national standard for any given bariatric procedure in 1981, Dr. Radecki stated that there was not and that surgeons were trying to develop a method which would be both easy and effective. See *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 260, 381 N.E.2d 279.

■ Plaintiff next contends that the circuit court erred in refusing to allow Dr. Radecki to testify on the issue of informed consent, a matter which does not require an expert witness to demonstrate a familiarity with the standard of care in the defendant physician's community or a similar community. *Hansbrough v. Kosyak* (1986), 141 Ill. App. 3d 538, 551, 490 N.E.2d 181; *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 9, 452 N.E.2d 751.

■ ■ A physician has a duty to inform patients of the foreseeable risks and results of a given surgical procedure, and the reasonable alternatives to such procedure. (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 6, 452 N.E.2d 751; *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 1031, 439 N.E.2d 1319.) The standard by which a physician's disclosure to his patient is evaluated is that of the reasonable physician, which measures the defendant physician's disclosure by what a reasonable physician would disclose under the same or similar circumstances. (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 6, 452 N.E.2d 751; *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 184, 262 N.E.2d 156.) Plaintiff correctly states that the locality rule does not apply to the issue of informed consent, and Dr. Radecki was thus not disqualified from testifying as to that matter. The only challenge to the competency of plaintiff's expert witness was premised on the locality rule and the trial court thus erred in excluding his testimony as to the informed consent issue requiring reversal and a new trial of that aspect of the case.

Plaintiff also contends that as expert testimony was not required on the issue of informed consent, the lay testimony presented was sufficient to withstand the motion for a directed verdict. It is well established that the standard of disclosure and the physician's failure to conform to it must be proved by expert medical evidence (*Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 6, 452 N.E.2d 751; *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 1032, 439 N.E.2d 1319), unless the matters involved are of common knowledge or within the experience of laymen. (*Taber v. Riordan* (1980), 83 Ill. App. 3d 900, 905, 403 N.E.2d 1349.) The "common knowledge" exception is rarely applied and is strictly limited to its facts. (*Tabor v. Riordan* (1980), 83 Ill. App. 3d 900, 905, 403 N.E.2d 1349.) Plaintiff argues that her own testimony established that she was not informed that she would have to continue dieting after surgery, and the complaint alleged that Dr. Solomon failed to inform her of the post-operative diet restrictions. We consider that expert testimony would be necessary to establish the proper diet to be prescribed following the surgical procedure and the preoperative disclosures regarding diet as such are not matters within the knowledge of laymen.

Accordingly, the directed verdict and judgment entered in favor of defendant, Dr. Solomon, is reversed and the cause remanded for a new trial of the informed consent issue.

Reversed and remanded.

DUNN and REINHARD, JJ., concur.